No. 32,078

GEORGE W. MILLER and ROY DILLON, doing business as MILLER & DILLON, *Appellees* and *Cross Appellants,* v. THE KANSAS CITY CHAMBER OF COMMERCE, *Appellant.*

(41 P. 2d 715)

Opinion filed March 9, 1935.

*William Drennan* and *Buford E. Braly,* both of Kansas City, for the appellant and cross appellee.

*Alan W. Farley* and *Elmer E. Martin,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by George W. Miller and Roy Dillon, doing business as Miller & Dillon, against the Kansas City Chamber of Commerce.

The defendant is a corporation maintaining in the city of Kansas City a club for social enjoyment, promoting the commercial and industrial development of the city. It conducts a café and dining room as part of its functions as a corporation, and Mrs. Packer is

a copartner and a joint adventurer, and for several years has been conducting a dining room at the place under the direction and control of the chamber of commerce.

For their first cause of action plaintiffs set out a copy of a bill of goods furnished, which sums up in value to $353.89, alleged to have been furnished defendant for the dining room. It is alleged to be due and owing to plaintiffs.

In a second count plaintiffs set up a bill furnished by The Charles Fisher Meat Company of $857.04. This bill was assigned to the plaintiffs, Miller & Dillon, on May 5, 1933, and a recovery of the amount is sought.

A third cause of action is for a bill of goods, $136.95, sold by the Wyant-Carlson Wholesale Grocery Co., to the defendant, a bill which has been duly assigned to Miller & Dillon, payment demanded and not made.

Plaintiffs therefore demanded judgment for the sum of these bills amounting to $1,347.88, and for interest at six per cent from the time they were purchased.

The answer of the defendant was first a general denial, and then it answered specifically denying that it conducted a café and dining room, and denied that Mrs. Packer managed and conducted it under their control or as their agent. It further denied it had ever purchased any of the goods mentioned, and stated that Mrs. Packer conducted the dining room and restaurant entirely in her own right and name, and that all supplies used in the restaurant had been purchased by Mrs. Packer personally, and that it had no connection whatsoever with the transactions.

Evidence was introduced upon which the jury returned a verdict in favor of the plaintiffs awarding them $1,347.88, the sum of the various items on the different bills upon which the suit was brought. There was no conflict in the evidence as to the goods received on the several bills or the amount of them, but there was no agreement as to the liability of the chamber of commerce. The chamber of commerce, it appears, equipped and ran the dining room for a considerable time, after which it entered into a contract with Mrs. Muse for the operation of the dining room, and a short time later with Mrs. Packer, which was continued for more than two years. She then surrendered and became a bankrupt. When the Muse and Packer contracts were made, letters were sent out or an attempt was made to send letters to the dealers by the chamber of commerce,

informing them of the transfer and that the dining room would be conducted under a new management. These letters were not received by the dealers involved here and they had no notice of the change. The goods were delivered at the same place and receipted for by employees of the dining room. The contract with Mrs. Packer was that the chamber of commerce furnished a kitchen and dining room, fully equipped, furnished with dishes, cooking utensils, chairs, etc. The chamber of commerce did the clerical work in typing menus, furnished janitor service, telephone, heat and light for the kitchen and dining room, furnished water, a bookkeeper to keep the accounts of the dining room, and agreed to render every possible assistance to make the service a success. In addition it exacted from the dining room two per cent of the gross receipts.

The letters were prepared in part by the manager of the chamber of commerce, and partly by several others who assisted, and together they checked them over and addressed and stamped them and left them with Miss Norris to recheck and mail. She has since died and, of course, did not testify in the case. The plaintiffs and assignors of the bills involved here told of the care taken with letters received as to changes of the names of customers and of those liable on bills of goods. They personally said that no such letters were received and if they had been they would have been preserved. Goods were ordered and delivered at the kitchen the same as before. The receipts were signed by the employee who received the goods at the kitchen and dining room.

A claim is made that notice was imparted to some extent by the checks that were paid for the goods. The checks paid were signed by Mrs. Packer and her name was printed at the upper left-hand corner of the check. It should be said, however, that the words, "Chamber of Commerce Dining Room," were printed in much larger type above the name of Mrs. Packer. Deliveries of goods purchased were made at the dining room and were receipted for by employees who happened to be present when the goods were delivered. This was done much the same as when the chamber of commerce was running the dining room alone.

If the notices had been received by the plaintiffs and their assignors, they might be required to look to Mrs. Packer for payment, but if the goods were purchased without notice under the peculiar plan, the plaintiffs had the right to think that no change had occurred. It was a question of fact for the jury to decide and that

question has been resolved in favor of the plaintiffs. On the question of notice, the court instructed the jury that:

"Notice, as used in these instructions, means actual knowledge of the manner in which the defendant and Mrs. Packer conducted the dining-room business, with respect to the payment of bills for goods, wares and merchandise furnished, or the receipt of a letter containing such information by the plaintiffs or their assignors, personally, or at their usual place of business, under such circumstances that they could and should have seen the same, or learned thereof in the usual course of their business."

The only question raised on this instruction is the meaning of the words "actual knowledge;" that is, such knowledge as came to them that they could and should have seen the same or learned thereof in the usual course of their business. We see no error in the instruction.

The court correctly instructed the jury as to the presumption that United States mail, properly addressed, stamped and mailed, will be delivered. Instruction number four, in part, says:

"There is a presumption of law that the United States postal authorities will discharge their duty, and that mail matter, properly addressed, stamped and mailed, will be delivered to the addressee. However, this presumption is rebuttable by evidence, and only exists in the event it is proven by the evidence that such mail matter in question was in fact properly addressed, stamped and actually deposited in the United States post office or in some United States post-office box for the reception of such mail."

The letters were not placed in the mail box by anyone; at least there was no testimony that anyone saw them mailed. Miss Norris, who rechecked them, did not testify that she mailed the letters or saw them placed in an official mail box nor did any of the others testify that the letters were placed in the mail box. When this is not shown the presumption does not arise, besides, as the court told the jury, it is a presumption that is rebuttable by evidence, and only exists in the event that it is proven by the evidence that such mail matter in question was in fact properly addressed, stamped and actually deposited in the United States post office or in some United States post-office box for the reception of such mail.

These were questions of fact for the jury to decide. Were notices given of the change in the management of the dining room? Were notices actually prepared to be sent, properly addressed, and were they placed in a United States mail box? If so, a presumption would arise they were received by the parties to whom they were addressed, but it is a rebuttable presumption as the jury were in-

formed. The plaintiffs say that no such letters were ever received by them, and they had no other means of knowing of a change in the plans. On the whole the question was one for the jury to decide, and they have determined that the notices if sent were not received, and this decision has been affirmed by the court that heard the evidence and refused the motion for a new trial.

The judgment is affirmed.