Ann M. YESSICK, Plaintiff,

v.

THE MIDLAND LIFE INSURANCE COMPANY, Defendant.

No. 1:00–CV–3099–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 25, 2001.

James Joseph Brissette, Esq., McGee & Oxford, Atlanta, GA, for Plaintiff.

H. Sanders Carter, Jr., Esq., Carter & Ansley, Atlanta, GA, for Defendant.

## *ORDER*

CAMP, District Judge.

The Plaintiff, Ann M. Yessick, brought this case in the Superior Court of Fulton County in the State of Georgia (Civil Action No.2000cv29795), against Defendant, The Midland Life Insurance Company, seeking to enforce a life insurance policy purchased by her husband Charles Yessick. Defendant had the case removed to this Court [# 1–1]. The case is presently before the Court on Defendant's Motion [# 17–1] for Summary Judgment.

## I. Background

The Defendant issued Policy No. Z13410 ("the policy"), a life insurance policy, to Charles Yessick, effective November 22, 1998, in the face amount of $800,000. Plaintiff is the primary beneficiary under the policy. Mr. Yessick's life insurance application indicates that semi-annual payments would be made, and that premium notices would be sent directly to Mr. Yessick, the "proposed insured." *Def.'s Mot. Summ. Judg.*, Exh. 3, Part I "Application for Insurance" Item 7. Mr. Yessick paid the first semi-annual premium in the amount of $1,262.56 when the policy was delivered. No further payments were made on the policy. Mr. Yessick died in a plane crash on September 3, 1999. It is disputed by the parties whether notice was mailed to Mr. Yessick regarding the second semi-annual payment due.

Defendant alleges that a premium notice was sent to Mr. Yessick on April 23, 1999, a month before the premium was due. Defendant also alleges that a lapse warning was sent to Mr. Yessick on June 7, 1999.

According to the Deposition of Mr. McCauley, a former employee of Defendant, Defendant's practice is to send premium notices to the insured 30 days before the premium is due. Thousands of notices are generated and printed daily by a computer in the Operations Department of Defendant company. This computer prints the insured's address that was previously entered from the insurance application on the notice. The notices printed are numbered in sequence beginning with No. 1. The computer also prints a billing audit report which lists the notices printed that day by number. The billing audit report does not list the address that was printed on the notice. If a premium notice was not printed, because, for example, the address information was incomplete, the computer places a check mark by the policy number on the billing audit report. The billing audit report is reviewed daily to look for check marks and to determine the reason such notices were not printed.

According to the deposition of Mr. Kerns, another former employee of Defendant, after being printed, the premium notices are sent to the mail room where they are folded and stuffed into windowed envelopes by a mechanical inserter. This machine also seals the envelope and affixes the postage. Then the envelopes are deposited into a mail receptacle where they are picked up by a company that presorts the mail and delivers it to the post office. If a notice is returned by the post office because of an incorrect address, the Policyowner Services Department is notified and takes steps to correct the information. This same procedure is followed with lapse warnings. Defendant does not keep copies of the premium notices or the lapse warnings that it sends.

According to the audit billing reports of April 23, 1999, and June 7, 1999, both a premium notice and a lapse warning were printed regarding Mr. Yessick's policy. *Def.'s Mot. Summ. Judg.*, Exh. 4 and Exh. 6. Defendant contends that because the notices were printed, they were mailed to Mr. Yessick according to the customary procedure described above.

Plaintiff alleges, however, that these notices were never received. Plaintiff states in her deposition that she checked the mail each day and sorted it. Mrs. Yessick states that bills she was familiar with were given to Mr. Yessick for payment, while bills with which she was unfamiliar she opened. Plaintiff states that because she was not familiar with Defendant, she would have opened any bill from Defendant. Because she never saw a notice from Defendant, Plaintiff concludes that one was not sent.

In any event, the second semi-annual premium due May 22, 1999 was not paid before the due date, nor within the 31 day grace period allowed by the insurance policy.

Defendant brings this motion for summary judgment alleging that there is no genuine issue of material fact as to whether Defendant should be required to pay the benefits of the policy, because the policy lapsed due to failure to pay premiums. Defendant further argues that (1) Defendant was not obligated, contractually, or otherwise to send premium notices to Mr. Yessick; and (2) Defendant did in fact send such notices to Mr. Yessick. Plaintiff argues, however, that Defendant was contractually obligated to provide Mr. Yessick with premium notices, and because Plaintiff did not receive such notices, Defendant cannot now enforce the lapse provision against Plaintiff. Because the Court finds that there is no genuine issue of material fact as to whether the premium notices were sent, Defendant's Motion [# 17–1] for Summary Judgment is **GRANTED.**

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor ....'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credi-

bility determinations. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied*, 16 F.3d 1233 (1994)(en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue. It must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels*, 941 F.2d at 1437–38).

On the other hand, when the non-moving party bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. Instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the

moving party may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-moving party may not rely upon allegations or denials in the pleadings, but instead must respond with sufficient evidence to withstand a directed verdict motion at trial. Fed.R.Civ.P. 56(e); *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir. 1994) (citing *Fitzpatrick,* 2 F.3d at 1116–17).

In the case at hand, the Defendant-movant, does not bare the burden of proof at trial, therefore, the Defendant may demonstrate a lack of evidence to support Plaintiff's case. In other words, Defendant must show that there is an absence of evidence to support Plaintiff's contention that Defendant breached its duties under the policy, thereby prohibiting Defendant from enforcing the lapse provision against Plaintiff.

## III. Statement of the Law

The Court first notes that it will not consider whether Defendant was contractually obligated under the insurance policy to send such notices. The Court will simply assume, for the purpose of this Order, that such obligation existed.

█ In support of her contention that there is a genuine issue of material fact as to whether the premium notices were sent to Mr. Yessick, Plaintiff points to several cases stating that evidence that the insured never received notice raises an issue of fact as to whether such notice was mailed under Georgia law. *Powell v. Lititz Mutual Ins. Co.,* 419 F.2d 62, 64 (5th Cir.1969); *Garber v. American Mutual-Fire Ins. Co.,* 131 Ga.App. 366, 206 S.E.2d 86 (1974). The cases that Plaintiff points to, however, relate to the cancellation of insurance policies by the insurer. Under Georgia law, an insurer may not cancel an insurance policy without first giving written notice of such cancellation. O.C.G.A. § 33–24–44 (1960). Therefore, in the cases cited by Plaintiff, stating that testimony of non-receipt of notice raises a jury issue, the insurer was required under Georgia law to notify the insured of cancellation. This notice requirement is not applicable to insurance policies that have lapsed. *King v. Guardian Life Ins. Co.,* 686 F.2d 894, 898 (11th Cir.1982)("lapse of a policy does not amount to 'cancellation' within the meaning of [O.C.G.A. § 33–24–44]"). Because this law applies only to cancellation of policies, Defendant was under no statutory duty to ensure that Mr. Yessick was actually notified.

As already stated the Court will assume that Defendant was under a contractual duty to send Mr. Yessick premium notices, as his insurance application indicated that notices would be sent directly to Mr. Yessick. The obligation to *send* such notices is entirely different, however, from the obligation to *notify* that is required by O.C.G.A. § 33–24–44. The pertinent issue here is whether there is a genuine issue of material fact regarding whether the premium notices were *sent* to Mr. Yessick. This Court finds that there is not.

█ The rule in both the 7th and 10th Circuits, with which this Court agrees, is that proof of routine, customary computerized procedures is sufficient to show adherence to such procedures. *Hotaling v. Chubb Sovereign Life Ins. Co.,* 241 F.3d 572 (7th Cir.2001); *Federal Kemper Life Assurance Co. v. Ellis,* 28 F.3d 1033 (10th Cir.1994). The Defendant has provided evidence of customary computerized procedures regarding mailing notices. The Defendant has shown that its practice is to send premium notices to the insured 30 days before the premium is due. Thousands of these notices are printed daily by a computer in the Operations Department.

The computer also prints a billing audit report which lists the notices printed that day. The billing audit report is reviewed daily to determine what notices failed to print, which are indicated by checkmarks. After being printed, the premium notices are sent to the mail room, and folded and stuffed into windowed envelopes by a mechanical inserter that seals the envelope and affixes the postage. Defendant also supplied the Court with the billing audit reports that indicate a premium notice and a lapse warning were generated regarding Mr. Yessick's policy. There were no checkmarks by the data which would show that the notices were not printed.

The Defendant has given evidence of its routine, customary computerized procedures regarding mailing notices. There is no indication that the Defendant did not adhere to such procedures regarding Mr. Yessick's policy. Therefore, there is no genuine issue of material fact regarding whether the notices were sent to Mr. Yessick by Defendant. Any contractual obligation Defendant had was fulfilled upon sending the notices. Mere denial of receipt on the part of Plaintiff does not raise a jury issue regarding whether the notices were mailed. *Kemper* 28 F.3d at 1040.

## IV. Conclusion

Accordingly Defendant's Motion [# 17-1] for Summary Judgment is **GRANTED**. Plaintiff's Motion [# 24-1] to File a Supplemental Brief is **GRANTED** in that such brief was attached to the motion and considered by the Court. Plaintiff's Motion [# 12-1] to Compel Discovery is **DENIED**.