Martha CARMACK, Plaintiff,

v.

The CHASE MANHATTAN BANK (USA), Defendant.

No. C 07–02124 WHA.

United States District Court, N.D. California.

Aug. 3, 2007.

Order Denying Reconsideration Sept. 18, 2007.

Order Granting Attorney Fees Nov. 1, 2007.

Martha Carmack, San Francisco, CA, Pro se.

George Geoffrey Weickhardt, Pamela Jeanne Zanger, Ropers, Majeski, Kohn & Bentley, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO CONFIRM ARBITRATION

WILLIAM ALSUP, District Judge.

### INTRODUCTION

This action is the fallout from an Internet scam evidently perpetrated on consumers over their heads in debt and looking for a way out. Plaintiff evidently fell prey to the scheme. Plaintiff contests the validity of an arbitration award against her, which defendant The Chase Manhattan Bank obtained at the National Arbitration Forum after plaintiff became delinquent on her credit card account. Chase has filed a motion to dismiss plaintiff's complaint and to confirm the arbitration award. Defendant's motion to dismiss, construed as a motion for summary judgment, is GRANTED, and the motion to confirm the arbitration award is GRANTED.

### STATEMENT

In May 2002, plaintiff opened a credit card account with First USA Bank, a predecessor-in-interest to defendant The Chase Manhattan Bank (USA). Plaintiff's account included a written "Cardmember Agreement," which contained the terms and conditions of plaintiff's account. One clause of this standard agreement established that "any use of your card or account confirms your acceptance of the terms and conditions of this agreement" (Rutledge Decl. Exh. A). Another term imposed arbitration: all disputes arising from plaintiff's account would be determined by binding arbitration before the National Arbitration Forum, a private provider of alternative dispute resolution services. The agreement contained a choice-of-law provision, stating that "THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE, AND,

AS APPLICABLE, FEDERAL LAW." It also included a paragraph that permitted the issuer to amend the agreement unilaterally, as long as sufficient notice was provided:

> **Changes in This Agreement:** We can at any time change this Agreement, including the **ANNUAL PERCENTAGE RATE** and any fees, and can delete provisions relating to your Account and the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. We will notify you of any change, addition, or deletion ... You will be deemed to accept all the changes, additions, and deletions accompanying the notice and to ratify and confirm all the provisions of your Agreement ... if you use the Card or Account after the conclusion of the specified time period [in the notice].

(Rutledge Decl. Exh. A at 2).

Defendant amended this agreement several times after plaintiff opened her account. In one amendment, mailed to plaintiff in April 2005, the arbitration clause of the agreement was modified. Defendant included in plaintiff's monthly statement a notice entitled "IMPORTANT NOTICE FOR CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR CARDMEMBER AGREEMENT— PLEASE READ AND RETAIN FOR YOUR RECORDS" (Rutledge Decl. Exh. C). The amended arbitration provision replaced the original arbitration clause, while clarifying the requirement that the arbitration agreement would cover all claims arising from the account:

> **Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns

of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, our credit card Account or the advertising, application, or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief.

*(ibid.).* The amended arbitration provision also stated that the party filing for arbitration would have to choose between either the American Arbitration Association or the National Arbitration Forum. Plaintiff never notified Chase of her refusal to abide by the terms of this amended arbitration provision, and the U.S. Postal Service never returned plaintiff's mail to Chase as undeliverable. Plaintiff, however, denies receipt of this amendment in her complaint: "Plaintiff never received a copy of any change or addition of new terms to the original agreement" (Compl. ¶ 24). Therefore, this order will assume the truth of this allegation for the purposes of this Rule 12 motion.

Plaintiff became delinquent on the account in September 2005, with a balance of approximately $11,548.33 and a credit limit of only $11,500. Around this time, plaintiff apparently obtained the services of North American Educational Services, an online service promising that customers could "Reduce Your Debt by 75% or More Today and Stop Making Payments Immediately" (Zanger Decl. Exh. B at 3). Among the plans offered by NAES was the opportunity to use "consumer remedies based on 12 C.F.R. (Code of Federal Regulations), the Fair Credit Billing Act, which is taken from Title 15 of the U.S.C. (United States Code) and other applicable federal laws" (*id.* at 7). NAES also promised that "With our Debt Elimination Program you can legally stop making payments ... IMMEDIATELY!!!" (*id.* at 1). According to defendant, NAES provided and continues to provide the materials necessary for indebted people to file lawsuits against their credit card provider. Defendant alleges that at least 37 "virtually identical" complaints have been filed against Chase in jurisdictions across the country (Zanger Decl. Exhs. E, H, K, M).

On September 26, 2005, plaintiff mailed a letter to Chase in regard to a "billing error" on the delinquent account. Plaintiffs letter was an almost verbatim copy of at least four other letters sent by other customers that Chase Manhattan provides in the record. The letter read as follows:

September 26, 2005

RE: Billing Error on Account # 4266812133912070 Amount in Dispute: $11,548.33

Dear Chase Manhattan Bank:

I am writing regarding the above account. I believe that my most recent statement, September 11, 2005 is inaccurate.

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated September 11, 2005. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated September 11, 2005. They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of mon-

ey or credit accepted by you should be the approximate amount that I list above. I am making this billing inquiry since I am uncertain of all the dates of the prepaid credits and also since there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing.

I am requesting that you provide me with an acknowledgment of this billing error and complete a full investigation by sending me a written explanation report related to the subject matter of this billing error.

I am also requesting additional documentary evidence of indebtedness of the account showing that you did not accept any note or similar instrument from me without properly crediting my account as agreed, which includes copies of the account entries that made you arrive at the recent balance shown on my statement.

I may exercise my right to withhold the disputed amount until you comply. Thank you for your time and consideration in this matter. If you have any questions please contact me immediately at the address below, but make sure your questions reference an acknowledgment to this billing error dispute.

Lastly, please remove my phone number . . . from your solicitation list as I do not wish to do any business with Chase Manhattan Bank over the phone. I am requesting that all communications be conducted in writing, and I appreciate you honoring my request.

Sincerely,

Martha Carmack

(Zanger Decl. Exh. C at 1). Although plaintiff's letter disputed the entire amount charged, it contested no specific transactions. Nor did plaintiff identify the "prepayments" she mentioned or any reason why she had a legitimate "understanding" that Chase would accept a "signed note" as a payment. Defendant never responded to plaintiff's letter.

In June 2006, plaintiff's account remained delinquent. Chase filed an arbitration claim with the National Arbitration Forum. On October 20, 2006, plaintiff filed an objection to this arbitration proceeding, saying that she "never consented or agreed to any contract of adhesion containing a forum selection clause that would subject me to the jurisdiction of the National Arbitration Forum, or any other Arbitration forum" (Rutledge Decl. Exh. F at 1). Plaintiff's arbitration objection, like her billing dispute, was patterned after the Internet formula (Zanger Decl. Exhs. G, J, O).

After her initial objection, plaintiff did not participate in the arbitration hearings. On November 1, 2006, the National Arbitration Forum ruled against plaintiff, granting an award to Chase in the amount of $15,625.25 (Rutledge Decl. Exh. G). This amount included the $14,193.41 due on plaintiffs credit card at the time of her last billing statement, attorney's fees of $1419.34, and approximately $12 in interest (Rutledge Decl. Exh. B; Rutledge Decl. Exh. G). Plaintiff, proceeding *pro se*, filed the present action in San Francisco Superior Court on February 1, 2007. Defendant removed the action to federal court on April 17. Defendant then filed a counterclaim to confirm the NAF arbitration award on April 24.[1] This Court has subject-matter jurisdiction because plain-

---

1. Plaintiff filed a substantively identical complaint on April 9, 2007. The only difference between the two complaints is that the second complaint refers to a different credit card with Chase Manhattan Bank. So far, no motions have been filed in the second action.

tiff presents a federal question pursuant to 28 U.S.C. 1331.

## ANALYSIS

In considering a Rule 12(b)(6) motion, a court may ordinarily look only at the face of the complaint. *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). Here, however, defendants rely on extra-complaint material, namely (1) the original and amended cardmember agreements, (2) plaintiff's monthly credit card statements from July 2002 to September 2005, (3) plaintiff's notice to Chase of an alleged billing error, (4) the record of arbitration proceedings against plaintiff, and (5) identical complaints, objections to arbitration, and billing error notices filed against Chase by other customers. A federal court must treat a Rule 12(b)(6) motion as one for summary judgment under Rule *56* to the extent such extra-complaint material is entertained, as here. *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 549 (9th Cir.1998).

As explained, plaintiff's complaint copies exactly other complaints filed against Chase and other credit-card providers in jurisdictions across the country (Zanger Decl. Exhs. E, H, K, M; P). The courts have generally found these suits to be frivolous. This Court similarly finds no merit in plaintiff's claims.

### 1. No Violation of TILA.

Plaintiff's first claim is that Chase violated the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, by initiating arbitration against plaintiff after plaintiff had filed her billing notice inquiry. The Truth in Lending Act contains a provision that requires creditors to respond to inquiries about billing errors:

If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connec-

tion with an extension of consumer credit, receives ... a written notice ... from the obligor in which the obligor—

(1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

(2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and

(3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error, the creditor shall [take appropriate action to investigate and correct any billing errors].

15 U.S.C. 1666(a). The creditor is only bound to take action if this billing notice is sent in a timely manner; pursuant to the Code of Federal Regulations, the sixty-day limitations period begins to run "after the creditor [has] transmitted the first period statement that reflects the alleged billing error." 12 C.F.R. 226.13(b)(1).

Upon receipt of a timely billing error notice from the consumer, the creditor must send the consumer written acknowledgment that the notice was received within thirty days. 15 U.S.C. 1666(a)(a). In addition, the creditor is required to investigate the disputed matter and either (1) make timely corrections or (2) send the consumer a timely written explanation of why the original statement was correct before any attempt on behalf of the creditor to collect the disputed amount. *American Express Co. v. Koerner*, 452 U.S. 233, 235–37, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981). Creditors are given the earlier of ninety days or two full billing cycles of the creditor after receipt of the notice to respond to the disputed matter. *Ibid.* The TILA prohibits lenders from collecting money on an account without first answering any pending billing error inquiries on the account. 15 U.S.C. 1666(a).

The TILA provides that a "billing error" can be any of the following:

(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarifications including documentary evidence thereof.

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement ... to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board.

15 U.S.C. 1666(b).

■ Plaintiff's attempted notice of billing error relies on her alleged understanding: "It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in my statement dated September 11, 2005" (Zanger Decl. Exh. C). Her notice did not claim that plaintiff ever actually tried to pay Chase via promissory notes or other instruments. Plaintiff has utterly failed to identify any purported note sent to Chase. More fundamentally, however, the notion that any debtor can unilaterally pay off debts with an "IOU" is preposterous. Since the notice failed to raise any plausible billing error, the notice was invalid from the start and Chase had no duty to respond to it. Therefore, the arbitration was not barred by Chase's failure to respond to the notice.

**2. BREACH OF CONTRACT.**

Plaintiff also attempts to state a claim for breach of contract due to defendant's resort to binding arbitration at the National Arbitration Forum, since "[p]laintiff denies that any arbitration agreement exists between the parties" (Opp. at 1). Moreover, plaintiff argues that she never "received a copy of any change or addition of new terms to the original agreement," so no arbitration clause could ever have been added to her cardmember agreement with defendant (Compl.¶ 24). Defendant counters by arguing that, even if plaintiff failed to receive any amendments to the original cardmember agreement, plaintiff is still bound by the arbitration clause in the original agreement, which referred all disputes to the National Arbitration Forum. This order will consider this argument only, since for the purposes of this Rule 12 motion we must assume that plaintiff never received notice of the amended cardmember agreement. Without doubt, plaintiff received the original cardmember agreement since she used the card enclosed therewith.

■ Despite the "liberal federal policy favoring arbitration agreements," *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), courts should look to state law to address issues concerning the validity and enforceability of contracts. *See Ticknor v.*

*Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir.2001). To hold an arbitration clause invalid for unconscionability in California, a plaintiff must establish both a procedural and a substantive element: "[Procedural unconscionability] focuses on oppression or surprise due to unequal bargaining power; [substantive unconscionability] on overly harsh or one-sided results." *Castle & Cooke Madera, Inc. v. Mackenzie Patterson Fuller, Inc.*, 2006 WL 1233125 *5 (N.D.Cal.2006) (Alsup, J.). Procedural unconscionability alone will not suffice to defeat a contract: "One cannot get out of a contract simply because it is drafted and imposed by a party with superior bargaining power ... A contract can only be revoked if it also does not fall within the reasonable expectations of the weaker or adhering party and is unduly oppressive." *Ibid.*

▪ Arbitration clauses contained within cardmember agreements, when contained in the initial agreement and not added later as an amendment, are generally upheld in California. *See, e.g., Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189, 1194 (S.D.Cal.2001) (Gonzalez, J.) (*rev'd on other grounds, Ting v. AT & T*, 319 F.3d 1126, 1150 (9th Cir.2003)). Even if credit card arbitration agreements are negotiated between parties with unequal bargaining strength, they are not substantively unconscionable where both parties are equally bound by the arbitration clause. *See Arriaga*, 163 F.Supp.2d at 1195 ("The arbitration clause in the present case is not one-sided because it requires both sides to submit all claims they may have against one another to the NAF.")—Arbitration clauses in credit card agreements that waive a party's right to bring a class action, however, have been held unconscionable in California. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir.2003); *see also Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181 (S.D.Cal.2005). Where a credit card arbitration agreement contains a class action waiver, the remainder of the arbitration provision can stand even if the class action waiver is struck down as unconscionable. *See Strand v. U.S. Bank Nat. Ass'n ND*, 2004 WL 5266928 *4 (C.D.Cal.2004) ("The parties will still engage in arbitration, but they may seek class-wide arbitration relief"). In Delaware, arbitration clauses in cardmember agreements have generally been upheld. *See Edelist v. MBNA America Bank*, 790 A.2d 1249 (Del.Super.2001).

Plaintiff fails in her opposition to contest the authenticity of the document which Chase presents as the original cardmember agreement (Rutledge Decl. Exh. A). Since plaintiff's complaint refers to and relies upon this cardmember agreement, the document presented by Chase will be treated as the authentic original cardmember agreement. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006). This original agreement included an arbitration clause stating that "Any claim, dispute or controversy ... arising from or relating in any way to this Agreement or your Account ... shall be resolved by binding arbitration by the National Arbitration Forum" (*ibid.*).

▪ In a self-serving manner, on July 30, plaintiff filed a supplemental declaration stating that "if called to testify ... I would testify to the following facts: (1) That said original agreement between Plaintiff and Defendant did not contain any provision or clause to submit any dispute arising out of the agreement to arbitration" (Carmack Supp. Decl.), This vague and conclusory declaration fails to dispute the authenticity of the cardmember agreement provided by Chase. Nor does it append "said original agreement" that purportedly differed from the one tendered by Chase. "[U]nless the challenge is to the

arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). "[T]he role of the federal courts in these circumstances is limited: the sole question is whether the arbitration clause at issue is valid and enforceable under § 2 of the Federal Arbitration Act ... In making this determination, federal courts may not address the validity or enforceability of the contract as a whole." *Ticknor v. Choice Hotels Intern., Inc.,* 265 F.3d 931, 937 (9th Cir.2001). The NAF arbitrator already found that "On or before 06/06/2006 the Parties entered into a valid, written agreement to arbitrate their dispute" (Rutledge Decl. Exh. G). Where, as here, plaintiff challenges the existence of a contract containing an arbitration clause, the question is left to the arbitrator. The arbitrator found that there was a valid and enforceable arbitration clause between plaintiff and defendant. This order will therefore treat the document provided by Chase, which contains an arbitration clause, as the original cardmember agreement between plaintiff and Chase.

█ Plaintiff states that she did not receive any amendments to the original cardmember agreement. Even if taken as true for the purposes of this motion, an arbitration clause existed in the original agreement. Plaintiff accepted the credit card and began using it. Credit card agreements containing arbitration clauses are not unconscionable in either California or Delaware when they bind both parties equally. Even where, as here, the arbitration provision contains an unconscionable class action waiver, the remainder of the arbitration provision is valid. Plaintiff therefore agreed to binding arbitration. Accordingly, this Court need not determine which state's law to apply. Plaintiff

contractually agreed in the original cardmember agreement to resolve disputes by binding arbitration before the National Arbitration Forum. Defendant therefore breached no contract with plaintiff by initiating arbitration after plaintiff became delinquent on her account. Plaintiff fails to state a claim for breach of contract under either California or Delaware law.

### 3. DUE PROCESS.

Plaintiff fails to present any colorable theory that her right to due process under the law has been violated. As stated, plaintiff was bound by an arbitration agreement with defendant. Federal law and the Federal Arbitration Act evince a strong presumption in favor of arbitration:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. 2. Arbitration must preserve certain procedural rights; an arbitration agreement will not be upheld unless it:

(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

*Cole v. Burns Intern. Sec. Services,* 105 F.3d 1465, 1482 (D.C.Cir.1997) (*cited ap-*

*provingly by Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir.2002)).

██ The National Arbitration Forum provides all of these procedural safeguards in its Code of Procedure (Zanger Decl. Exh. A).[2] The NAF has been recognized by other courts as a viable alternative to the judicial system. Justice Ginsburg, in a dissenting opinion in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 95 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), listed the NAF as an example of a national arbitration organization with a "fair cost and fee allocation" model. A Mississippi district court held that the NAF's Code of Procedure prevented any partiality towards banking institutions. *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819, 835 (S.D.Miss.2001) (Lee, J.) ("the rules governing the conduct of NAF arbitrations belie defendant's speculation that suspected bias by the NAF has any realistic potential for affecting decisions of arbitrators in NAF arbitrations"). Other circuit and district courts have generally accepted the use of the NAF in arbitration. *See, e.g., Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903 (7th Cir.2004) (affirming district court's order compelling arbitration at the NAF); *Lux v. Good Guys, Inc.*, 2006 WL 357820 *2 (C.D.Cal.2006) (Carney, J.) ("Mr. Lux has not shown that the National Arbitration Forum ('NAF') is one-sided").

Accordingly, plaintiff fails to state a claim for a violation of her right to due process under the law.

### 4. CONFIRMATION OF ARBITRATION.

Defendant has moved to confirm arbitration under the Federal Arbitration Act. The FAA states that a federal district court "must grant an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. 9. "There are only four grounds to vacate or to correct an arbitration award under sections 10 and 11:(1) fraud in the procurement of the agreement; (2) arbitrator corruption; (3) arbitrator misconduct or exceeding of powers; and (4) corrections for material miscalculations, exceeding of powers, or imperfection of form." *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1104 (9th Cir. 2003). The Ninth Circuit has said: "[I]t is generally held that an arbitration award will not be set aside unless it evidences a manifest disregard for law." *Ibid.*

 Plaintiff fails to state a claim under the FAA for vacating or correcting defendant's NAF arbitration award. Plaintiff fails to plead fraudulent procurement of the arbitration agreement, arbitrator misconduct or material miscalculation of the arbitration award. Plaintiff seems to plead that the NAF is biased in favor of Chase Manhattan Bank: "One cannot help but question the impartiality of a forum that stands to giant considerable future business and income from Defendant ... and the likelihood of no future business from Plaintiff (Opp. at 6)." The Ninth Circuit requires a high standard for allegations of actual bias by an arbitrator under

---

**2.** The NAF's Code of Procedure provides guidelines to ensure procedural protections for both parties. To ensure a neutral arbitrator, NAF Rule 23 disqualifies any potential arbitrators with a conflict of interest; the code also provides for a party to request disqualification of a biased arbitrator. Rule 37, on arbitration awards, contains no limitations on the amount that can be awarded to either party. Rule 29, on discovery, permits interrogatories, document requests, physical examinations, and other discovery. Rule 37(f) requires the arbitrator to prepare a written arbitration award (Zanger Exh. A). Finally, Chase agreed in the arbitration clauses in all cardmember agreements to pay for the initial costs of arbitration (Rutledge Exh. C).

the FAA: "The appearance of impropriety, standing alone, is insufficient to establish evident partiality in actual bias cases, because a reasonable impression of partiality does not necessarily mean that the arbitration award was the product of impropriety." *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996) (internal citations and quotations omitted). To establish an arbitrator's "actual bias," therefore, "the party alleging evident partiality ... must establish specific facts which indicate improper motives." *Ibid.* In *Woods*, the Ninth Circuit upheld the impartiality of an arbitration panel composed of a randomly selected group of two Saturn dealers and two Saturn employees. *Id.* at 426, 429 ("His assertion that [the arbitrators'] jobs would be jeopardized if they decided against Saturn is unsupported; for example, he does not show that the employees who may serve as arbitrators are not subject to an employment contract that specifies their salary and tenure").

Plaintiff has failed to plead any facts indicating improper motives by the NAF arbitrator. As stated, the National Arbitration Forum provides the procedural protection of a neutral arbitrator; plaintiff had the opportunity to challenge the neutrality of her arbitrator during the course of arbitration, yet she chose not to do so. Moreover, in *Woods*, the Ninth Circuit upheld as impartial an arbitration panel with a much more obvious source of bias than the NAF arbitrator here—the arbitrators there were employees and business associates of one of the parties. Here, the only business relationship pleaded by plaintiff is defendant's regular use of the NAF as an arbitrator in credit card disputes. Without pleading facts that specifically indicate improper motives by the NAF arbitrator, plaintiff fails to state a claim for vacating or correcting the NAF arbitration award.

Plaintiff's only other challenge to the arbitration award lies in her argument that "[p]laintiff never consented to the use of binding arbitration" (Opp. at 7). As stated, however, plaintiff accepted the terms in Chase Manhattan Bank's cardmember agreement, including a binding arbitration clause, when she began using her credit card. Plaintiff therefore fails to state a claim for vacating or correcting the NAF arbitration award. Defendant's motion to confirm the arbitration award is therefore GRANTED.

### 5. MOTION TO STRIKE ZANGER DECLARATION.

Plaintiff moved at oral argument to strike one of defendants' exhibits, a declaration by defense attorney Pamela Zanger, since it was prepared by defendant's counsel and counsel would not be permitted to testify in court. This is not a valid objection because exhibits in an attorney's declaration may be considered in evaluating a summary judgment motion. *See, e.g., Hess v. Multnomah County*, 211 F.R.D. 403, 406 (D.Or.2001) ("Steenson's Affidavit states merely that '[a]ttached are true copies of the following documents which are offered as exhibits in opposition to Defendant's Motions ... The declaration of an attorney is sufficient to authenticate such discovery documents."). Plaintiff's motion to strike is DENIED,

### CONCLUSION

Plaintiff has failed to state a claim for a violation of the Truth in Lending Act, breach of contract or a violation of her right to due process under the law. Defendant's motion to dismiss, construed as a motion for summary judgment, is hereby GRANTED. "Dismissal is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980). Although

plaintiff has not suggested any new grounds for resisting the award, plaintiff may have until AUGUST 16 to file a motion seeking leave to amend. Any such motion must include the proposed amended pleading and explain why it would have merit.

**IT IS SO ORDERED.**

### ORDER DENYING MOTION FOR RECONSIDERATION

On August 3, 2007, an order herein granted defendant's motions to dismiss and to confirm an arbitration award against plaintiff. Plaintiff was given until August 16 to file a motion seeking leave to amend her complaint, but failed to do so. On August 27, an order to show cause requested that plaintiff explain why a final judgment should not be entered against her. The deadline passed and a final judgment was entered against plaintiff, confirming the arbitration award and dismissing plaintiff's complaint with prejudice on August 31.

On August 31, plaintiff filed a motion for leave to file a motion for reconsideration. Plaintiff argues that under 9 U.S.C. 4, a jury right exists when there is a question of fact as to whether an arbitration agreement existed between plaintiff and defendant, and that in this case there is such a question. Plaintiff argues that "the specific right to a trial by jury was not properly considered by the Court when rendering the decision" (Br.3). Plaintiff finally responded to the order to show cause, which was due on August 30, on September 4, 2007. Defendant's opposition to plaintiff's motion for leave to file a motion for reconsideration was received on September 7, 2007.

After considering both sides' arguments, plaintiff's motion is **DENIED** and the prior judgment **REMAINS IN EFFECT**.

Motions for reconsideration are decided within the discretion of the district court. Civil Local Rule 7–9(b) governs the standard applied here. Rule 7–9(b) states that a motion for reconsideration can be filed if the Court manifestly failed to consider material facts or dispositive legal arguments, or if the moving party can show a material difference in fact or law from the time the original order was entered.

As she urged in the first round of briefing, plaintiff states that the "[a]greement [related to the credit card account with defendant] contained no provision to resolve disputes using arbitration" (Carmack Decl. at 2). As stated before, however, even if plaintiff did not receive any amendment to the arbitration clause, plaintiff must have received the original cardmember agreement since she used the credit card enclosed with it. There is no other way she could have obtained the card. It is undisputed that the original agreement contained an arbitration clause, which stated in part that "any use of your card or account confirms your acceptance of the terms and conditions of this agreement" (Rutledge Decl. Exh. A). Plaintiff did use the card, and this Court has already found the clause valid and that plaintiff agreed to binding arbitration (Order at 10).

Plaintiff's argument that the Court manifestly failed to consider a dispositive legal argument is based on 9 U.S.C. 4, which allows a party to seek to compel arbitration when the other party is alleged to have failed to comply with an arbitration agreement between the parties. Plaintiff contends that her "right to a jury trial pursuant to 9 U.S.C. 4 was unknown to plaintiff and therefore not presented to this Court as an argument" (Br.3). Section 4 also allows for the party alleged to have failed to comply with the arbitration agreement to request a jury to determine if there was an agreement and whether

there was compliance. While it is true that the Court did not consider Section 4 in granting defendant's motion to confirm the arbitration award, this fact is unhelpful to plaintiff because Section 4 is inapplicable to the facts of this case. This case did not involve an attempt to compel arbitration but, rather, the defendant's motion to confirm an arbitration award.

■ Defendant correctly states that a motion to confirm an arbitration award is governed by 9 U.S.C. 9, which states that "*any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.*" Section 9 does not grant the right to a jury, nor do Sections 10 and 11. This case did not involve an attempt to compel arbitration under 9 U.S.C. 4. Thus, plaintiff's request to file a motion for reconsideration must be DENIED.

Accordingly, plaintiff's motion for reconsideration is DENIED and the judgment in favor of defendant REMAINS IN EFFECT.

**IT IS SO ORDERED.**

## ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

### INTRODUCTION

Defendant Chase Manhattan Bank moves for an award of attorney's fees and costs against pro se plaintiff Martha Carmack. For the reasons stated below, defendant's motion for attorney's fees is GRANTED.

### STATEMENT

On November 1, 2006, an arbitration award was entered in the National Arbitration Forum in favor of defendant Chase and against plaintiff in the amount of $15,656.25 for the unpaid balance on a credit card account (Weickhardt Decl. at ¶3). On February 1, 2007, plaintiff commenced suit against defendant, alleging that she had entered into a contract with defendant that was governed by the Truth in Lending Act. She claimed that Chase had violated 15 U.S.C. 1666(a) by not responding to her notice of billing error, that Chase had breached the contract, and that the arbitration provision constituted a violation of due process (*id.* at ¶4). Defendant filed an answer and counterclaim to confirm the arbitration award. It also moved to dismiss the complaint. On August 3, 2007, the Court granted defendant's motion to dismiss and motion to confirm arbitration. The Court entered judgment in favor of defendant on August 31, 2007 (*id.* at ¶3–10). Plaintiff then moved for leave to file a motion for reconsideration, which the Court denied.

On September 18, 2007, defendant Chase moved for attorney's fees and costs. Defendant sought a total of $22,495.95, which Chase claims represented the amount devoted to defending plaintiff's complaint and prosecuting its counterclaim through August 31, 2007. "These fees represented 38.5 hours of time by George G. Weickhardt billed at the rate of $245.00 per hour and 68.5 hours of time by Pamela J. Zanger billed at the rate of $215.00 per hour" (Weickhardt Dec. at ¶12, Weickhardt Decl. Exh. B). After plaintiff pointed out that some of these hours represented time devoted to a second lawsuit with plaintiff Carmack, defendant reduced the amount of its claim. Defendant Chase seeks an adjusted total of $21,971.08 in attorney's fees and costs (Krog Decl. at 2–4).

### ANALYSIS

The Court has already found the credit card agreement to be a valid and enforce-

able contract (Aug. 3 Order). It provided that:

> If permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after some default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fees of such attorney.

(Rutledge Decl. Exh. A). According to its declarations and exhibits, defendant incurred $22,495.95 in attorney's fees and costs.

California Civil Code 1717(a) states, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Here, defendant Chase was the party prevailing on the contract because it obtained judgment in its favor and confirmation of the arbitration award. It was therefore entitled to "reasonable attorney's fees in addition to other costs." The trial court has broad authority to determine the amount of a reasonable fee. *PLCM Group v. Drexler,* 22 Cal.4th 1084, 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511 (2000).

Pro se plaintiff Carmack challenges the motion on the grounds that the fees were excessive. *First,* she claims that the amount of hours billed was excessive. Attorney George G. Weickhardt "has specialized in consumer finance litigation for most of his legal career and has handled hundreds of cases involving credit cards." The other attorney working on this case was Pamela Zanger, who "has practiced in the consumer financial services area for approximately ten years" (Weickhardt Decl. at ¶ 13). Plaintiff Carmack argues that the amount of time devoted to the motion was "excessive for someone who has this much experience" (Opp. at 1). According to Attorney Weickhardt, however, "[b]ased on [his] experience in observing fee applications filed by other law firms in San Francisco, the hourly rates charged by [Attorney Weickhardt] and Ms. Zanger are approximately half of the average hourly rates charged by attorneys with equivalent credentials and experience employed by the largest law firms in San Francisco. The total amount of time devoted to this matter (approximately 100 hours) is reasonable in terms of the task involved, which included removing the action, drafting an Answer and Counterclaim, drafting the Motion to Compel Arbitration, plus a Reply Brief, opposing Plaintiff's Motion for Reconsideration, and drafting and filing the present Motion for Fees" (Weickhardt Decl. at ¶¶ 14–15). This order reduces the compensable time. Approximately one hundred hours is somewhat more than the Court would expect to have been incurred by attorneys with the experience involved.

*Second,* plaintiff claims that all hours were billed by partners without the use of a more junior attorney. Consequently, the costs were excessive. This order finds plaintiff's argument to be of little merit. Defendant and defense counsel were under no obligation to employ a more junior attorney to handle a portion or all of the case. It was entirely reasonable for two senior attorneys who had ample experience in consumer finance litigation to work on the matter. Injecting a less experi-

enced junior staffer could have multiplied the hours.

*Third,* plaintiff notes that there were hours billed involving a different case, *Martha Carmack v. Chase Manhattan Bank,* Case No. C 07–03464. These amounts should therefore not be applied to the attorney's fees and costs in the present matter. In its reply brief, defendant Chase admitted its mistake in including these hours, which were "inadvertently included in the timesheets attached to the motion" (Reply at 2). After subtracting the extra entries, defendant Chase reduced the claim by $2,005.50, leaving a total of $21,971.08.

The trial court has the discretion to determine the amount of a reasonable fee. Taking into account the pro se nature of the representation, because this order finds that defendant Chase is entitled to reasonable attorney's fees and costs under the valid credit card agreement, plaintiff Carmack is required to pay $ 9,000.

## CONCLUSION

For the foregoing reasons, defendant's motion for attorney's fees is **GRANTED**. Plaintiff Carmack is ordered to pay $ 9,000 in attorney's fees and costs.

**IT IS SO ORDERED.**