**Joe D. DANIEL, Plaintiff,**

v.

**CHASE BANK USA, N.A., Defendant.**

**Civil Action No. 3:07–CV–09–JTC.**

United States District Court,
N.D. Georgia,
Newnan Division.

March 16, 2009.

---

Joe D. Daniel, LaGrange, GA, pro se.

John H. Bedard, Jr., Keary Floyd, Franzen & Salzano, Norcross, GA, for Defendant.

## *ORDER*

JACK CAMP, District Judge.

Pending before the Court are the Magistrate Judge's Final Report and Recommendation [# 50] and Plaintiff's Objections [# 51]. This action arose out of Plaintiff's failure to make payments to satisfy the $38,104.30 balance he owed on his credit card account. After Plaintiff stopped making payments on his account, Defendant, pursuant to the terms of the Cardmember Agreement, filed an arbitration claim with the National Arbitration Forum. An arbitration award was entered in favor of Defendant and against Plaintiff in the amount of $41,257.59.

Plaintiff, who is proceeding *pro se,* brought this action alleging that Defendant violated the Truth in Lending Act by failing to respond to a billing inquiry he sent Defendant and filing an arbitration claim against him after he submitted the inquiry. Defendant asserted a counterclaim seeking confirmation of the arbitration award. Subsequently, Defendant moved for summary judgment on Plaintiff's claims and moved to confirm the arbitration award.

The Magistrate Judge recommends granting Defendant's motion for summary judgment [# 46], dismissing Plaintiff's claims, and confirming the arbitration award. Specifically, the Magistrate Judge found that Defendant did not violate the

Truth in Lending Act, Defendant did not breach its contract with Plaintiff, and the entry of the arbitration award did not violate Plaintiff's rights to due process. Finally, the Magistrate Judge found that pursuant to the terms of the Cardmember Agreement, Defendant is entitled to recover its reasonable attorney's fees for prosecuting its counterclaim. Plaintiff filed a brief Objection, raising the same argument considered and rejected by the Magistrate Judge—that his declaration creates a genuine question of material fact as to whether he agreed to arbitrate his claims.

### I. Standard of Review

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72, the Court has conducted a careful, *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which Plaintiff objected. The Court has reviewed the remainder of the Magistrate Judge's Report and Recommendation for plain error.

### II. Analysis

Upon a careful review of the Magistrate Judge's Report and Recommendation, Plaintiff's Objections, and the record, the Court agrees in all material respects with the Report and Recommendation. As the Magistrate Judge analyzed at length, Plaintiff's declaration stating that the original Cardmember Agreement did not allowing Defendant to alter or amend the agreement or add additional terms is contradicted by the unambiguous language of the Cardmember Agreement.

The Cardmember Agreement is governed by Delaware law. (Report & Recommendation at 1288 n. 8.) Under Delaware law, a bank may at any time add or alter the terms of a credit card agreement, including adding arbitration provisions, so long as the bank provides the cardmember with the required notice. *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1257 (Del.Super.Ct.2001); *see also Kurz v.*

*Chase Manhattan Bank USA, N.A.*, 319 F.Supp.2d 457, 463 (S.D.N.Y.2004). The amendments to the Cardmember Agreement, which Defendant mailed to Plaintiff, included a provision for the arbitration of claims. In contrast to Plaintiff's Objections, no genuine question of material fact exists as to whether the Cardmember Agreement required the parties to submit their disputes to arbitration.

Finally, Plaintiff contends that Section 4 of the Federal Arbitration Act creates a right to a jury trial. As Plaintiff acknowledges, however, this argument was not presented to the Magistrate Judge, and he raises it for the first time in his Objections to the Report and Recommendation. Where a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider the argument. *Williams v. McNeil*, 557 F.3d 1287 (11th Cir.2009). Because Plaintiff failed to present this issue to the Magistrate Judge, the Court declines to consider Plaintiff's new argument at this stage of the proceedings. Moreover, even if the Court considered Plaintiff's additional argument, it would not alter the outcome of this case because Section 4 is not applicable to this case. *See Carmack v. Chase Manhattan Bank*, 521 F.Supp.2d 1017, 1028–29 (N.D.Cal. 2007). This action involves a motion to confirm an arbitration award, which is governed by 9 U.S.C. 9, not an attempt to compel arbitration. Section 9 does not grant the right to a jury trial. *Id.* at 1029. Accordingly, the Court **ADOPTS** the Final Report and Recommendation [# 50] and **OVERRULES** Plaintiff's Objections [# 51].

### III. Conclusion

The Court **OVERRULES** Plaintiff's Objections [# 51] and **ADOPTS** the Magistrate Judge's Final Report and Recom-

mendation [# 50] as the opinion of this Court. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment [# 46]. The Court **DIRECTS** the Clerk to enter Judgment in favor of Defendant and against Plaintiff on Plaintiff's claims. The Court **CONFIRMS** the arbitration award issued December 18, 2006, and **DIRECTS** the Clerk to enter judgment in favor of Defendant Chase Bank USA, N.A. and against Plaintiff Joe D. Daniel in the amount of $41,257.59. The Court **DIRECTS** Defendant to submit a fee application with supporting affidavit setting forth its reasonable fees incurred for prosecuting its counterclaim within ten (10) days of entry of this Order. The Court **DIRECTS** the Clerk to close this case.

### ORDER FOR SERVICE OF FINAL REPORT AND RECOMMENDATION

RUSSELL G. VINEYARD, United States Magistrate Judge.

Attached is the Report and Recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and this Court's Local Rule 72. Let the same be filed and a copy, together with a copy of this Order, be served upon plaintiff and counsel for the defendant.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir.1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

### MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Pending before the Court is defendant Chase Bank USA, N.A's, motion for summary judgment and to confirm arbitration award. [Doc. 46]. Plaintiff Joe D. Daniel, proceeding *pro se*, filed a response in opposition, [Doc. 48], to which defendant has replied, [Doc. 49]. For the reasons stated herein, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion be **GRANTED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about August 31, 1995, plaintiff opened a credit card account with First USA Bank, N.A., bearing an account number ending in 4654 ("Account").[1] [Doc. 1–2

---

1. In connection with its motion and as required by Local Rule 56.1(B)(1), defendant submitted a statement of material facts as to which there is no genuine issue to be tried. [Doc. 46–3]. Plaintiff was required to submit a response under Local Rule 56.1(B)(2)(a), but instead submitted his own statement of material facts that he contends are in dispute, [Doc. 48 at 4–5], to which defendant replied by stating objections to the admissibility of those facts, [Doc. 49–2]. Because plaintiff failed to comply with Rule 56.1(B)(2)(a) by filing a separate statement of material facts in response to each of defendant's numbered statements, the Court is authorized to deem admitted each of defendant's statements of undisputed facts. *Jackson v. City of Stone Mountain*, 232 F.Supp.2d 1337, 1341 (N.D.Ga.2002). In his statement of material

¶¶ 3–4; Doc. 46–4 (Rutledge Aff.) ¶¶ 8–9; Doc. 46–3 ¶ 2]. First USA Bank, N.A., subsequently changed its name to Bank One, Delaware, N.A., and defendant merged with Bank One, Delaware, N.A., on October 1, 2004, becoming the successor-in-interest to plaintiff's Account. [Doc. 46–4 ¶ 8; Doc. 46–3 ¶ 2]. When plaintiff opened the Account, he received a Cardmember Agreement, which established the terms of the Account. [Doc. 46–4 ¶ 9; Doc. 46–5; Doc. 46–3 ¶ 6]. The 1995 Cardmember Agreement, attached as an exhibit to defendant's summary judgment motion, provides, in part: "Any use of your Card or Account confirms your acceptance of the terms and conditions of this Agreement." [Doc. 46–5; Doc. 46–4 ¶ 9; Doc. 46–3 ¶ 6].[2]

The Cardmember Agreement's choice of law provision states that the agreement and plaintiff's Account would be governed by Delaware law and, as applicable, federal law. [Doc. 46–5; Doc. 46–4 ¶ 10; Doc. 46–3 ¶ 7]. There is also a provision allowing for amendments to the agreement, which states:

> **Amendments:** We can amend the terms of this Agreement at any time. We will notify you [illegible] what these amendments are. Subject to the requirements of applicable law, any amendment [illegible] this Agreement will become effective at the time stated in our notice to you and, unless [illegible] specify otherwise, the amended terms of this Agreement will apply to all outstanding un-

pai[d] indebtedness to your Account as well as new transactions.

[Doc. 46–5; Doc. 46–4 ¶ 11; Doc. 46–3 ¶ 8]. Plaintiff contends in his sworn declaration in support of his opposition to defendant's motion for summary judgment that the 1995 Cardmember Agreement did not have any clause or provision allowing defendant to alter, amend, or change the agreement, but plaintiff did not produce a copy of a different Cardmember Agreement that he claimed to have received. [Doc. 48 at 19 (Pl's Decl.) ¶ 3].

An amendment to the Cardmember Agreement was mailed to plaintiff in November 1997 ("First Amendment"), which included a provision for arbitration of claims, stating, in part:

> Any claim, dispute or controversy ("Claim") by either you or us against the other, ... arising from or relating in any way to this Agreement or your Account, ... shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Precedure [sic] in effect at the time the Claim is filed. ... This arbitration agreement applies to all Claims now in existence or that may arise in the future. ... IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE

---

facts in dispute, plaintiff essentially states that the original agreement could not be amended, that he never received notice of any amendment, and that he never agreed to binding arbitration. [Doc. 48 at 4–5]. Plaintiff has not refuted any of defendant's other statements of facts, and consequently they are deemed admitted. The Court will discuss the material facts plaintiff maintains are disputed in addressing the merits of the motion.

**2.** The original Cardmember Agreement states that the terms "we," "us," and "our" in the agreement refer to First USA Bank, which preceded defendant as obligee on the Account, while the terms "you" and "your" refer to the person who applied for or is responsible for the Account. [Doc. 46–5 at 3].

PROVIDED ABOVE, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

[Doc. 46–4 ¶¶ 12–13; Doc. 46–6; Doc. 46–3 ¶¶ 9–10]. The First Amendment also states, in part, "If you do not wish to accept the new terms, you must notify us in writing of your decision by December 30, 1997." [Doc. 46–6; Doc. 46–4 ¶ 12; Doc. 46–3 ¶ 9]. The First Amendment was mailed to plaintiff on or after November 4, 1997, with the periodic account statement for that month, and its mailing was recorded in the computer system records for plaintiff's Account. According to defendant, First USA did not receive written notification from plaintiff of his intent not to accept the terms of the Cardmember Agreement or the First Amendment. [Doc. 46–4 ¶ 14; Doc. 46–3 ¶ 11].

A second amendment to the Cardmember Agreement was mailed to plaintiff by Bank One Delaware, N.A. on or after December 2, 2003 ("Second Amendment"), along with the monthly statement for the Account, and this amendment also contained an arbitration clause, providing, in part:

> ARBITRATION: The following replaces the section entitled "Arbitration": PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT.... IN THE ABSENCE OF THS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS). HOWEVER, EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED AND ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION....
>
> The party bringing the Claim may select any one of three national arbitration organizations to administer the arbitration of the Claim: the National Arbitration Forum ("NAF") ...

[Doc. 46–4 ¶ 15; Doc. 46–7; Doc. 46–3 ¶ 12]. Defendant states that it recorded the mailing of the Second Amendment to plaintiff and that it did not receive any written notification from plaintiff of his intent not to accept the terms of the Second Amendment. [Doc. 46–4 ¶ 16; Doc. 46–3 ¶ 13]. Defendant also states that the First and Second Amendments and corresponding monthly statements were not returned as undeliverable by the postal service. [Doc. 46–4 ¶ 17; Doc. 46–3 ¶ 14]. Plaintiff maintains that he has no knowledge of any attempt by defendant to amend the Cardmember Agreement, and that he was never given the option to refuse or opt-out of any proposed amendments to the agreement. [Doc. 48 at 20 ¶¶ 10–11].

Defendant asserts that plaintiff agreed to be bound by the terms and conditions of the Cardmember Agreement and the amendments, including the arbitration provisions, when he made charges on his credit card, otherwise used his Account, and never sent written notice that he would not accept the terms of the amendments. [Doc. 46–4 ¶¶ 18–19; Doc. 46–8; Doc. 46–3 ¶ 16]. Plaintiff first used the Account on or about September 7, 1995, by authorizing charges, [Doc. 46–4 ¶ 20; Doc. 46–3 ¶ 17], and monthly account statements were thereafter mailed to him by First USA, Bank One, and defendant when there was activity on the Account, [Doc. 46–4 ¶ 21; Doc. 46–8; Doc. 46–3 ¶ 18].

Plaintiff began making payments on the Account in October 1995, and the last pay-

ment he made was on October 28, 2005. [Doc. 46–4 ¶¶ 22–23; Doc. 46–8; Doc. 46–3 ¶¶ 19–20]. Plaintiff thereafter ceased making payments, [Doc. 46–4 ¶¶ 26–27; Doc. 46–3 ¶¶ 23–24], but he inquired in November 2005 about perceived inaccuracies on the Account's monthly statement sent on October 7, 2005; defendant did not respond to this inquiry. [Doc. 1–2 ¶ ¶ 8, 12]. Plaintiff's letter reads:

November 9, 2005

RE: Billing Error on Account # * * * * * * * * * * * * 4654

Amount in Dispute: $32,340.19

Dear Chase Manhattan Bank:

I am writing regarding the above account. I believe that my most recent statement, dated October 7, 2005, is inaccurate.

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated October 7, 2005. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated October 7, 2005. They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I list above. I am making this billing inquiry since I am uncertain of all the dates of the prepaid credits

and also since there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing.

I am requesting that you provide me with an acknowledgment of this billing error and complete a full investigation by sending me a written explanation report related to the subject matter of this billing error.

I am also requesting additional documentary evidence of indebtedness of the account showing that you did not accept any note or similar instrument from me without properly crediting my account as agreed, which includes copies of the account entries that made you arrive at the recent balance shown on my statement.

I may exercise my right to withhold the disputed amount until you comply. Thank you for your time and consideration in this matter. If you have any questions please contact me immediately at the address below, but make sure your questions reference an acknowledgement to this billing error dispute. Lastly, please remove my phone number . . . from your solicitation list as I do not wish to do any business with Chase Manhattan Bank over the phone. I am requesting that all communications be conducted in writing, and I appreciate your honoring my request.

Sincerely,

Ned Daniel[3]

[Doc. 46–10 at 15 (Pl's 11/9/05 letter) ].[4]

Plaintiff did not pay the amounts due, and on or about May 31, 2006, after plain-

---

**3.** Plaintiff handwrote his name next to Ned Daniel's and signed his name on the signature line.

**4.** Defendant asserts that plaintiff's lawsuit arises from a debt elimination scheme he purchased from an internet-based company called North American Educational Services, which resulted in almost identical lawsuits

being filed across the country by *pro se* plaintiff's against defendant. [Doc. 46–2 at 1–2 & n. 2; Doc. 46–10 at 7–8 (Def.'s First Requests for Admissions), nos. 5, 6, & 7; Doc. 46–10 at 24 (Answers to Defendant's Requests for Admissions), nos. 5, 6, & 7].

tiff had gone over eight months without making any payments to satisfy the Account balance of $38,104.30, defendant "charged-off" the balance, filed an arbitration claim with the NAF against plaintiff in July 2006 to collect the balance, interest, costs, and attorneys' fees associated with collection, and reported to credit reporting agencies that plaintiff was delinquent on the Account. [Doc. 46–4 ¶¶ 26–30; Doc. 46–3 ¶¶ 24–27]. An arbitration award was entered in favor of defendant and against plaintiff in the amount of $41,257.59 on December 18, 2006. [Doc. 1–2 ¶ 27; Doc. 46–4 ¶ 31; Doc. 46–9; Doc. 46–3 ¶ 28]. Plaintiff claims that he never granted any authority to the NAF to proceed with the arbitration, and he filed objections to the arbitration proceeding with the NAF. [Doc. 48 at 20 ¶ 13; Doc. 48–2; Doc. 1–2 ¶ 26]. Plaintiff claims that the NAF still conducted the arbitration hearing without his consent or participation and entered an arbitration award without first obtaining a determination of arbitrability by a court. [Doc. 48 at 21 ¶¶ 16–17; Doc. 1–2 ¶¶ 27, 30].

On January 17, 2007, plaintiff filed a complaint in the State Court of Troup County, Georgia. Under the heading "Statutory Violations and Damages," plaintiff claims that defendant violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), by failing to respond to his billing inquiry and by filing an arbitration claim against him after he had filed a billing notice inquiry. [Doc. 1–2 ¶¶ 12–14]. Under the heading "Breach of Contract," plaintiff alleges that defendant breached the original contract by filing a claim with the NAF when no agreement to arbitrate existed, [*id.* ¶¶ 20–33], and under the heading "Violations of Rights," he asserts that by filing the arbitration claim, defendant violated plaintiff's rights under the law, [*id.* ¶¶ 34–41]. On February 14, 2007, defendant removed the action to federal court, [Doc. 1], and thereafter filed an answer and counterclaim, [Doc. 2]. Defendant asserts in the counterclaim that plaintiff breached the Cardmember Agreement by failing to make payments on the Account after October 28, 2005, and pursuant to the Cardmember Agreement mandating that all disputes be resolved through binding arbitration, it seeks confirmation of the NAF arbitration award. [Doc. 2 at 9–10].

## II. *STANDARD OF REVIEW*

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant bears the initial burden of asserting the basis of its motion, and the burden is a light one. *Id.* at 323, 106 S.Ct. 2548. The movant is not required to negate its opponent's claim. Rather, the movant may discharge this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. When this burden is met, the non-moving party is then required to "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (*quoting* Fed. R.Civ.P. 56(e)) (internal marks omitted).

The evidence and factual inferences are to be viewed in the light most favorable to the non-moving party. *See Rollins v.*

*TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). However, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Young v. Gen. Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988). Similarly, substantive law will identify which facts are material. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case, so as to create a genuine issue for trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Rollins,* 833 F.2d at 1528.

## III. *ANALYSIS*

### A. Whether defendant violated the TILA

■ Defendant seeks summary judgment on plaintiff's TILA claim, asserting that it did not violate the TILA by failing to respond to plaintiff's billing error notice, closing his Account, reporting the delinquency to credit reporting agencies, and proceeding with its arbitration claim, because plaintiff's notice of billing error did not comply with the TILA and thereby did not trigger defendant's duty to respond. [Doc. 46–2 at 9–10]. The TILA requires a credit card issuer/creditor to respond to inquiries about billing errors:

> If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives ... a written notice ... from the obligor in which the obligor—
>
> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

> (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>
> (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error, the creditor shall [take appropriate action to investigate and correct any billing errors].

15 U.S.C. § 1666(a); *Carmack v. Chase Manhattan Bank (USA),* 521 F.Supp.2d 1017, 1022 (N.D.Cal.2007). If a creditor receives a timely written notice from the obligor that meets these requirements, the creditor must send the consumer written acknowledgment of receipt within 30 days and investigate the disputed matter and either make timely corrections or send the obligor a timely written explanation of why the original statement was correct before making any attempt to collect the disputed amount. 15 U.S.C. § 1666(a); *Carmack,* 521 F.Supp.2d at 1022 (*citing Am. Express Co. v. Koerner,* 452 U.S. 233, 235–37, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981)). The creditor must respond to the disputed matter within the earlier of ninety days or two full billing cycles after receipt of the billing error notice. 15 U.S.C. § 1666(a).

The TILA provides that a "billing error" can be any of the following:

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computational error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement . . . to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board.

15 U.S.C. § 1666(b). Plaintiff's purported notice states his belief that defendant agreed to accept plaintiff's "signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated October 7, 2005." [Doc. 46–10 at 15]. Plaintiff also requested that defendant provide him with "documentary evidence of indebtedness of the [A]ccount showing that [defendant] did not accept any note or similar instrument from [plaintiff] without properly crediting [his][A]ccount." [Id.].

Defendant argues that the notice fails to identify a particular transaction or amount believed to be mistaken, and instead challenges the entire Account balance; fails to identify the purported prepayments or to state when or in what amounts or by what methods they were made; fails to identify the agreement allowing prepayment by a promissory note or other similar instrument; and because it fails to satisfy the TILA's requirement to "set[ ] forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error," defendant had no duty to respond to the notice or to refrain from collecting on plaintiff's Account. [Doc. 46–2 at 11]. Plaintiff argues that the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq. ("FCBA"),[5] and its implementing regulation, Regulation Z, 12 C.F.R. 226.1 et seq., "contemplate that a consumer may not possess all of the information necessary to precisely identify the extent of a claimed billing error," and that a "request for clarification may itself constitute a billing error that triggers the procedural framework for resolving billing disputes." [Doc. 48 at 7 (citing Burnstein v. Saks Fifth Ave. & Co., 208 F.Supp.2d 765, 774–75 (E.D.Mich.2002)) ].

The procedures set forth in the FCBA and Regulation Z are only triggered when the obligor provides the requisite written notice of a billing error. Burnstein, 208 F.Supp.2d at 772. Here, the Court finds that defendant did not have a duty to respond to plaintiff's notice because he did not satisfy the statutory requirements for identifying a billing error. Plaintiff's November 9, 2005, letter to defendant is an almost verbatim copy of the "billing error" letter sent by the plaintiff in Carmack (which in turn was an "almost verbatim copy of at least four other letters sent by other customers that Chase Manhattan provide[d] in the record"). 521 F.Supp.2d at 1020. The Carmack court found that

---

5. See Garner v. MBNA Am. Bank, N.A., Civil Action 3:05–cv–1029–R, 2006 WL 2354939, at *4 (N.D.Tex. Aug. 14, 2006) ("The [FCBA], 15 U.S.C. 1666–1666j, is enforced by the [TILA] and sets-forth procedures through which a debtor and creditor may resolve disputes arising from alleged billing errors in statements of account."); Koerner v. Am. Express Co., 615 F.2d 191, 194–95 n. 2 (5th Cir.1980) (citation omitted), (the FCBA contains the 1974 Amendments to the TILA), reversed on other grounds, 615 F.2d 191 (5th Cir.1980). Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

the plaintiff's notice did not raise any plausible billing error, and therefore did not trigger Chase Manhattan's duty to respond, because the plaintiff "did not claim that [she] ever actually tried to pay [Chase Manhattan] via promissory notes or other instruments" and "utterly failed to identify any purported note sent to [Chase Manhattan]," and because the "notion that any debtor can unilaterally pay off debts with an 'IOU' is preposterous." *Id.* at 1023. Here, plaintiff has made no showing that he tried to pay defendant with promissory notes or other instruments or that he was even allowed to make such prepayments, as he has not presented any evidence refuting the Cardmember Agreement and amendments, which do not provide that the obligor can make payments in this way. [Doc. 46–2 at 11].[6] The undersigned is persuaded by the reasoning of the cases cited by defendant and therefore finds that plaintiff's notice of billing error did not comply with the FCBA or its regulations because plaintiff failed to identify a billing error.

Additionally, plaintiff's claim that the entire Account balance is in dispute, without pointing out a specific "computation error or accounting error," does not provide the requisite notice of billing error required by the statute. *Esquibel v. Chase Manhattan Bank USA, N.A.,* 487 F.Supp.2d 818, 829 (S.D.Tex.2007) (challenges to accuracy of finance charges and late or over-the-limit fees do not qualify as billing errors, and plaintiff's claim that entire balance was in dispute because these amounts had been added to total amount owed was meritless). *See also Franklin Bank v. Tindall,*

No. 07–13748, 2008 WL 4771927, at *8 & n. 12 (E.D.Mich. Oct. 27, 2008) (where letters to creditor were "completely devoid of any reference related to a specific belief [obligor] may have had regarding an alleged billing error and the reasons for such a belief," court rejected obligor's attempts to place entire amount due in dispute based on assessment of single disputed late charge) (internal marks and citation omitted); *Theriault v. FIA Card Servs., N.A.,* Civil Action No. 07–2978, 2008 WL 2787465, at *5 (E.D.La. July 17, 2008) (letter did not give creditor notice of belief of billing error because it "merely stated that [the obligor] disputed the correctness of his entire account balance," and "did not establish with any specificity an error in regard to an extension of credit, an erroneous charge for goods or services which he did not receive, an erroneous reflection of a payment made on the account, a computational error, or a failure to send an account statement").

Plaintiff's statement that the entire balance was in dispute, without identifying the specific transactions that caused the balance to be incorrect, was not a sufficient notice of billing error and did not trigger defendant's duty to respond. Although the regulation only requires that the written notice indicate the consumer's belief that a billing error exists and the reasons for such a belief "[t]o the extent possible," 12 C.F.R. § 226.13(b)(3), plaintiff's reliance on *Burnstein,* 208 F.Supp.2d at 774, is misplaced. In that case, the plaintiff's letter informing the creditor of her belief in a billing error, while not setting forth the precise amount of the

---

**6.** Along with *Carmack,* defendant also cites *Millan v. Chase Bank USA, N.A.,* 533 F.Supp.2d 1061, 1064 (C.D.Cal.2008), in which the obligor's "notice of billing error" was a letter nearly identical to the one plaintiff sent in this case. [*See* Doc. 46–2 at 11 n. 33]. The court found that the plaintiff's written notice did not comply with the requirements of the statute because the plaintiff pointed to the entire amount due on his most recent statement as the amount in dispute and did not identify the "prepayments" he purportedly made, except to say that they likely added up to the entire amount owed. *Millan,* 533 F.Supp.2d at 1066.

claimed error, left "very little room for doubt" as to the approximate extent of the error because she claimed that the creditor had been double billing her maiden-name and married-name accounts for four years, and the record showed that she did not receive any statements for her maiden-name account between 1996 and December 1999, when she received a statement under her married-name account showing that she was billed for two purchases in November 1999. *Id.* at 773–74. Thus, the extent and source of the error in *Burnstein* were reasonably identified such that the creditor could investigate it. Here, plaintiff simply disputed the entire account balance dated October 7, 2005, without providing any relevant dates or details surrounding the alleged errors. [Doc. 46–10 at 15].

The court in *Burnstein* also noted that a "request for clarification" may constitute a "billing error" that triggers the FCBA and Regulation Z procedures, since both the statute and the regulation define a "billing error" as encompassing a " 'reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.' " 208 F.Supp.2d at 774 (*quoting* 15 U.S.C. § 1666(b)(2)). The *Burnstein* court construed plaintiff's letter to her creditor as a request for clarification because she provided evidence that a customer service representative had advised her on the telephone of possible double billing errors, referenced documentation she had faxed to the representative, and showed that the defendant's representatives had not followed up as promised after her telephone call. *Id.* Again, however, plaintiff's case is distinguishable because 15 U.S.C.

§ 1666(b)(2) contemplates a "reflection on a statement of an extension of credit," and, as defendant notes, plaintiff's billing error notice challenges his entire Account balance and fails to identify any particular "extension of credit" he believed to be mistaken. [Doc. 49 at 2]. Thus, plaintiff's notice cannot constitute a request for clarification, and defendant is entitled to summary judgment on this count.[7]

## B. Whether defendant breached its contract with plaintiff

■ In plaintiff's second cause of action for breach of contract, he appears to seek vacatur of the NAF arbitration award entered in favor of defendant. Plaintiff alleges that the original Cardmember Agreement did not contain any provision or clause requiring the parties to submit their disputes to arbitration or any provisions allowing defendant to change or add new terms to the original agreement to include arbitration. [Doc. 1–2 ¶¶ 22–23]. Plaintiff alleges that he filed a Notice of Objection to Arbitration with the NAF, and that the arbitrator "exceeded his authority to decide the matter and illegally entered an Award against [him], absent jurisdiction when no agreement existed between parties to arbitrate." [*Id.* ¶¶ 26, 30]. Defendant seeks summary judgment on this count, arguing that plaintiff has presented no evidence in support of his position that the arbitration award should be vacated. [Doc. 46–2 at 12–13].

Plaintiff's contentions require the Court to consider the terms of the original 1995 Cardmember Agreement. In support of its motion for summary judgment, defendant has submitted what it contends is the original Cardmember Agreement. [Doc.

---

**7.** *See also Langenfeld v. Chase Bank USA, N.A.,* 537 F.Supp.2d 1181, 1198 n. 18 (N.D.Okla.2008) (*quoting* 15 U.S.C. § 1666(b)(2)) (agreeing with the conclusion of the *Burnstein* court that a request for clarification may itself constitute a billing error that triggers the procedural framework for resolving disputes "only if the request is for the purpose of clarifying a 'reflection … of an extension of credit' on a billing statement").

46–5]. Plaintiff has not presented any different version of the original Cardmember Agreement or competent evidence to refute that the agreement submitted by defendant is the 1995 Cardmember Agreement. Plaintiff states in his complaint that he is not in possession of the original Cardmember Agreement, [Doc. 1–2 ¶ 21], and in his response to defendant's Requests for Production of Documents No. 20, which asked plaintiff to produce all credit card statements and Cardmember Agreements in his possession or control for any account issued by Chase Bank, [Doc. 46–11 at 14 (Def.'s Reqs. Produc. Docs.), no. 20], plaintiff responded, in part, that defendant was "already in possession of the documents requested," [Doc. 46–12 at 8 (Pl.'s Resp. Def.'s Reqs. Produc. Docs.), no. 20]. Thus, plaintiff has acknowledged that defendant is in possession of the 1995 Cardmember Agreement, and there is no genuine issue regarding the authenticity of the document defendant submits as the original agreement. [Doc. 46–5]. Thus, the Court will consider the terms of this agreement to determine if it could be amended to include an arbitration provision. *See Carmack*, 521 F.Supp.2d 1017, at 1025.

■ The original Cardmember Agreement contains no arbitration clause but states that the agreement can be amended at any time and that the amended terms will apply to all outstanding unpaid indebtedness on the Account as well as new transactions. [Doc. 46–5 at 3]. Although plaintiff states in his declaration that the original Cardmember Agreement "did not have any clause or provision that allowed [d]efendant to alter, amend or change the agreement and/ or add new terms to the agreement in any way whatsoever," [Doc. 48 at 19 ¶ 3], and that he "never received or assented to any agreement resembling [d]efendant's alleged agreement or amendments," [*id.* at 20 ¶ 4], the language of the agreement is unambiguous and establishes otherwise. "Under Delaware law,[8] a credit card issuing bank may unilaterally add or alter an arbitration provision to a credit card agreement by sending notice and giving the cardholder an opportunity to send notice to the bank of a rejection of the amendment." *Stinger v. Chase Bank, USA, NA*, 265 Fed.Appx. 224, 229 (5th Cir.2008) (unpublished) (*citing Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1257–1260 (Del.Super.Ct.2001) & Del.Code Ann. tit. 5, § 952(a)) (footnote added);[9] *Kurz v.*

8. Plaintiff states that Delaware law "does not apply here as [d]efendant may contend," [Doc. 48 at 8], and that the agreement is "governed by a choice of law provision favoring the laws of my home state of Georgia," [*id.* at 21]. A federal district court applies the conflict of laws rules prevailing in the forum state. *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 748 F.2d 568, 570 (11th Cir. 1984). The choice of law provision in the 1995 Cardmember Agreement unambiguously states, "THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW." [Doc. 46–5 at 3]. The Court finds that this provision is valid and that Delaware law governs. "Georgia courts have consistently held that choice of law provisions contracted by parties are enforceable and apply to both a contract's

construction and its remedy." *BP Lubricants USA Inc. v. Global Saturn, Inc.*, No. 1:06–cv–0149 WSD, 2007 WL 1589566, at *2 n. 1 (N.D.Ga. June 1, 2007) (*quoting Carr v. Kupfer*, 250 Ga. 106, 296 S.E.2d 560, 562 (1982) (" 'Absent a contrary public policy, this court will normally enforce a contractual choice of law clause.' ")). Because plaintiff has not shown that enforcement of the choice of law provision contravenes public policy, Delaware law applies.

9. The Delaware stature provides in relevant part:

Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the

*Chase Manhattan Bank USA, N.A.*, 319 F.Supp.2d 457, 463 (S.D.N.Y.2004). Thus, in order for defendant to effect a unilateral amendment containing an arbitration clause, it had to send plaintiff notice of the amendment with an opportunity to "opt-out by sending to the [creditor] at a provided address written notice of the borrower's rejection of the amendment." *Kurz*, 319 F.Supp.2d at 463; *Edelist*, 790 A.2d at 1257–58.

Defendant has presented evidence that it mailed the amendments containing arbitration provisions to plaintiff, [Doc. 46–2 at 15],[10] but plaintiff avers in his sworn declaration that he regularly checks his mail and never received any notice of amendment or change to the terms of the original agreement and never received notice of defendant's intent to use binding arbitration, [Doc. 48 at 20 ¶¶ 5–6]. In a similar case, the Eleventh Circuit held that an arbitration agreement added by amendment was valid where "[t]he original agreement stated it could be amended pursuant to Delaware law and [the issuing bank's] affidavit showed the amendment had been sent out in compliance with Delaware law," even though the cardholder denied receiving notice of the amendment. *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed.Appx. 863, 866 (11th Cir.2006) (unpublished) (*citing Edelist*, 790 A.2d at 1257–58). While plaintiff denies that he received any amendment to the original agreement, he has presented no evidence to contradict defendant's proof that it sent the notices of amendment, as required by Delaware law. *Id.*; *Mackey v. MBNA Am. Bank, N.A.*, 343 F.Supp.2d 966, 970 (W.D.Wash.2004); *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 918–19 (N.D.Tex.2000). "Mere denial of receipt on the part of [p]laintiff does not raise a jury issue regarding whether the notices were mailed." *Yessick v. Midland Life Ins. Co.*, 178 F.Supp.2d 1301, 1305 (N.D.Ga.2001) (*citing Federal Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1040 (10th Cir.1994)). Because it is undisputed

---

amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to plan benefits or features, the rate or rates of periodic interest, the manner of calculating period interest or outstanding unpaid indebtedness, variable schedules or formulas, interest charges, fees, collateral requirements, methods for obtaining or repaying extensions of credit, attorney's fees, plan termination, the manner for amending the terms of the agreement, *arbitration or other alternative dispute resolution mechanisms*, or other matters of any kind whatsoever. Unless the agreement governing a revolving credit plan otherwise expressly provides, any amendment may, on and after the date upon which it becomes effective as to a particular borrower, apply to all then outstanding unpaid indebtedness in the borrower's account under the plan, including any such indebtedness that arose prior to the effective date of the amendment.... *Any notice of an amendment sent by the bank may be included in the same envelope with a periodic statement or as part of the periodic statement or in other materials sent to the borrower.*

Del.Code Ann. tit. 5, § 952(a) (emphasis added).

10. Defendant presented evidence that it mailed the amendments to plaintiff along with his periodic account statements; that it recorded the mailings in its computer system records for plaintiff's Account; that the amendments and corresponding monthly statements were not returned as undeliverable by the postal service; that First USA did not receive written notification from plaintiff of his intent not to accept the terms of the Cardmember Agreement; and that plaintiff made charges and payments to the Account from 1995 to 2005 after receipt of the monthly statements and amendments. [Doc. 46–4 ¶¶ 14–17, 20, 22–23; Doc. 46–3 ¶¶ 11–14, 17, 19–20].

that the notices were sent to plaintiff as required by Delaware law, and he continued to make charges on the Account without opting-out, plaintiff's mere denial of receipt of the amendments is insufficient to create a genuine issue of material fact to defeat summary judgment. *Discover v. Vaden*, 489 F.3d 594, 607 (4th Cir.2007) (card holder's mere denial of receipt of amendment adding arbitration agreement did not create "a question of material fact about the existence of an arbitration agreement") (internal marks and citation omitted); *Tinder v. Pinkerton Security*, 305 F.3d 728, 735–36 (7th Cir.2002) (summary judgment not overcome where plaintiff's only evidence that she did not receive notice of arbitration provision was her own affidavit in which she avers that she did not recall seeing or reviewing the arbitration brochure included with her payroll check); *Walters v. Chase Manhattan Bank*, No. CV–07–0037–FVS, 2008 WL 3200739, at *3 (E.D.Wash. Aug. 6, 2008) ("self-serving declaration" denying receiving notice of amendment insufficient to defeat summary judgment); *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07–cv–918–J–33HTS, 2008 WL 150479, at *6 (M.D.Fla. Jan. 14, 2008) (plaintiffs who filed affidavits denying receiving arbitration notices failed to create genuine issue of fact where notices were mailed in same envelope as cable bills and the bills were received and paid).

Plaintiff argues that the language of Del. Code Ann. tit. 5, § 952(a), cited by defendant, was not in effect at the time the original Cardmember Agreement was entered into in 1995, and that the statute actually read:

> Unless the agreement governing a revolving credit plan otherwise expressly provides, any amendment may, on and after the date upon which it becomes effective as to a particular borrower, apply to all then outstanding unpaid indebtedness in the borrower's account under the plan, including any such indebtedness that arose prior to the effective date of the amendment.

[Doc. 48 at 10 (*citing* Reviser's Note to Del.Code Ann. tit. 5, § 952(a) (emphasis omitted) ].[11] Plaintiff points out that the statute was amended in 1999 to state, in part:

> Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms . . . .

[Doc. 48 at 10–11 (*citing* Del.Code Ann. tit. 5, § 952(a) (emphasis omitted) ]. Plaintiff argues that the 1999 amendment allowed for the addition of new terms and/ or deletion of old terms in a credit card agreement, whereas the former section did not, [Doc. 48 at 11], but defendant responds that even if the language is as plaintiff states it was in 1995, it would still

---

**11.** The Court's own research indicates that in 1995 this section actually read, in relevant part:

> A bank may, if the agreement governing a revolving credit plan so provides, at any time or from time to time amend the terms of such agreement (including, without limitation, the terms governing the periodic percentage rate or rates used to calculate interest, the method of computing the outstanding unpaid indebtedness to which such rate or rates are applied, the amounts of other charges and the applicable installment repayment schedule) in accordance with the further provisions of this section.

Del.Code Ann. tit. 5, § 952(a) (1995).

support defendant's position that it could amend the agreement at any time and that the amendment would apply to plaintiff's outstanding unpaid indebtedness, [Doc. 49 at 3], and the Court agrees.

Plaintiff also argues that there was no provision for arbitration in section 952 *et seq.,* and that the statute only discussed amendments relating to periodic interest rates. *See* Del.Code Ann. tit. 5, § 952(b). However, this latter section simply pertains to amendments that increase the rate or rates of periodic interest, but does not imply that this was the only type of amendment that could be made. The original language still would have allowed a creditor to make amendments, and defendant's inclusion of an amendment provision in its 1995 Cardmember Agreement allowed it to later amend the agreement to include an arbitration provision. Thus, defendant did not breach its contract with plaintiff by filing a claim with the NAF, and defendant is entitled to summary judgment on plaintiff's breach of contract claim. *Carmack,* 521 F.Supp.2d at 1022; *Pham v. Chase Bank USA, N.A.,* No. 1:07CV0005 JMM, 2008 WL 94739, at *2 (E.D.Ark. Jan. 7, 2008).

## C. Whether plaintiff's due process rights have been violated

■ Plaintiff claims that the arbitration award was entered in violation of his right to due process under the law and that defendant violated plaintiff's right to use the courts as a means to resolve disputes, violated plaintiff's right to trial by jury, and violated the obligation of the original contract in violation of the Constitution. [Doc. 1–2 ¶¶ 34–41]. Defendant argues in response that the Fourteenth Amendment Due Process Clause is limited to state action and that plaintiff has not demonstrated that an arbitration before the NAF violated his rights to due process under the law. [Doc. 46–2 at 16–17]. Plaintiff has not responded to this argument.

■ Plaintiff has failed to present any colorable theory that his due process rights have been violated. Plaintiff was bound by an arbitration agreement with defendant, and there is a strong presumption in favor of arbitration under federal law and the Federal Arbitration Act ("FAA"), which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. However, an arbitration agreement will not be upheld unless it preserves the following procedural protections: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Carmack,* 521 F.Supp.2d at 1025–26 (*quoting Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (D.C.Cir.1997)).

Courts have generally accepted the use of the NAF in arbitration. *See Carbajal v. H & R Block Tax Servs., Inc.,* 372 F.3d 903, 904 (7th Cir.2004); *Carmack,* 521 F.Supp.2d at 1026 (*citing Bank One, N.A. v. Coates,* 125 F.Supp.2d 819, 835 (S.D.Miss.2001); *Lux v. Good Guys, Inc.,* No. SACV05–300CJCANX, 2006 WL 357820, at *2 (C.D.Cal. Feb. 8, 2006)). The NAF's Code of Procedure provides guidelines to ensure that the foregoing

requirements are met, and there is no evidence that the NAF did not provide these safeguards. *Carmack,* 521 F.Supp.2d at 1026 n. 2. Plaintiff had an opportunity to present his case to the arbitrator, and although he filed an objection to the arbitration claim, [Doc. 1–2 ¶ 26; Doc. 46–4 ¶ 30; Doc. 46–3 ¶ 27], he did not defend himself at the arbitration proceedings. *See Millan,* 533 F.Supp.2d at 1067. Accordingly, there is no genuine issue of material fact that precludes granting summary judgment for defendant on plaintiff's due process claim.

### D. Whether the arbitration award should be confirmed

■ Plaintiff has petitioned the Court to vacate the arbitration award, while defendant seeks confirmation of the award in its motion for summary judgment. [Doc. 1–2 at 8; Doc. 46–2 at 17–18]. Judicial review of an arbitration award is narrowly limited under the FAA. This Court must confirm the award "unless the award is vacated, modified, or corrected" as provided by §§ 10 and 11 of the FAA. 9 U.S.C. § 9. The FAA "imposes a heavy presumption in favor of confirming arbitration awards." *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1288 (11th Cir.2002) (*citing Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.,* 146 F.3d 1309, 1312 (11th Cir.1998)). Therefore, a court's confirmation of an arbitration award is usually routine or summary. *Id.* at 1288–89 (citation omitted). The only bases to vacate an award are: (1) corruption, fraud, or undue means in procuring the award; (2) evident partiality or corruption in the arbitrators, or either of them; (3) arbitrator misconduct or misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeding their powers, or so imperfectly executing them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a). Additionally, "[a]n award may be vacated if it is arbitrary and capricious, if enforcement of the award is contrary to public policy, or if the award was made in manifest disregard for the law." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.,* 441 F.3d 905, 909–10 (11th Cir.2006) (internal citations omitted). The burden is on the party requesting vacatur of the arbitration award to prove one of these four bases. *Riccard,* 307 F.3d at 1289; *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1223 (11th Cir.2000).

Plaintiff does not make out a claim on any of these bases, arguing only that he filed an objection to arbitration and that the arbitration award "indicates on its face that the arbitrator exceeded its authority and stated its determination of arbitrability." [Doc. 48 at 14–16]. Plaintiff claims that the arbitrator "simply has no authority at all until a valid arbitration agreement is established." [*Id.* at 15]. As discussed, however, the arbitration provision in the amendments to the original Cardmember Agreement was valid, and plaintiff accepted the terms of the arbitration agreement by failing to opt-out of it and continuing to make purchases with his credit card. *See Millan,* 533 F.Supp.2d at 1068; *Carmack,* 521 F.Supp.2d at 1027 ("As stated, however, plaintiff accepted the terms in Chase Manhattan Bank's cardmember agreement when [he] began using [his] credit card.").

■ Upon examination of the award itself, [Doc. 46–9], the Court finds that it was not arbitrary or capricious or made in manifest disregard for the law. The arbitrator stated that he did not know of any conflicts of interest, that the matter involved interstate commerce and the FAA governed the arbitration, that the claim was properly served on plaintiff, that the parties had entered into a valid, written agreement to arbitrate their dispute, that the arbitration agreement was valid and enforceable, that the matter was arbitrable under the terms of the parties' arbitration

agreement and the law, that the arbitration proceeded in accord with the Code of Procedure Rules, that the evidence submitted supported issuance of the award, and that the applicable substantive law supported the issuance of the award. [*Id.*]. Plaintiff has not met his burden of proving one of the bases for vacating the arbitration award, and the undersigned therefore **RECOMMENDS** that defendant's counterclaim requesting confirmation of the arbitration award be **GRANTED.**

### E. Whether defendant is entitled to attorney's fees

Defendant argues that it is entitled to the reasonable attorney's fees it incurred in prosecuting its counterclaim and motion for summary judgment because the Cardmember Agreement contains a provision for the assessment of such fees and collection of costs under the heading "Default/Collection Costs":

> As permitted by applicable law you agree to pay all collection expenses actually incurred by us in the collection of amount you owe under the Agreement (including court costs and the fees of any collection agency [illegible] which we refer your (Account) and, in the event we refer your Account after your default to [illegible] attorney who is not our regularly salaried employee, you agree to pay the reasonable fees [illegible] such attorney.

[Doc. 46–5 at 3; Doc. 46–2 at 19–20]. Plaintiff simply denies that there was any agreement authorizing defendant to collect attorney's fees, [Doc. 48 at 15], but the Court has already rejected plaintiff's unsubstantiated claims regarding the original Cardmember Agreement. Because plaintiff agreed in the original Cardmember Agreement to pay reasonable attorney's fees incurred by defendant in collecting amounts plaintiff owed under the agreement, the undersigned **RECOMMENDS** that defendant be awarded reasonable attorney's fees for prosecuting its counterclaim. *Wilkerson v. Capital One Bank*, No. 2:05–cv–1192–WKW–WO, 2007 WL 4200633, at *1 n. 2 (M.D.Ala. Nov. 26, 2007); *Carmack*, 521 F.Supp.2d at 1031. The trial court has the discretion to determine the amount of a reasonable fee, *Carmack*, 521 F.Supp.2d at 1031; therefore, if this Report and Recommendation is adopted, the undersigned **RECOMMENDS** that defendant be directed to submit a fee application with supporting affidavit for consideration by the Court. *See Pham*, 2008 WL 94739, at *2 (awarding reasonable attorney's fees and directing defendant to submit fee application).

### IV. CONCLUSION

Based upon the foregoing, the undersigned **RECOMMENDS** that defendant's motion for summary judgment and to confirm arbitration award, [Doc. 48], be **GRANTED,** and that defendant be awarded reasonable attorney's fees.

**IT IS SO RECOMMENDED**, this 13th day of January, 2009.